MORNING STAR MINING COMPANY v. WILLIAMS.

Opinion delivered May 24, 1926.

ATTORNEY AND CLIENT—RATIFICATION OF EMPLOYMENT.—Where plaintiff accepted employment as defendant's attorney from defendant's former manager, under reasonable belief that such employment was authorized, evidence that the plaintiff conferred with the officers of defendant concerning the litigation and was encouraged by them to continue in its prosecution, *held* sufficient to show ratification of the employment.

Appeal from Marion Circuit Court; *J. M. Shinn,* Judge; affirmed.

*J. H. Black* and *Coleman, Robinson, House & Riddick,* for appellant.

*Floyd & Floyd,* for appellee.

McCULLOCH, C. J.   This is an action instituted by appellee against appellant to recover compensation for services rendered in certain litigation in which appellee appeared as attorney for appellant.   The litigation in question, was a case which came to this court on appeal. *Morning Star Mining Co.* v. *Bennett,* 164 Ark. 244. Appellee alleged in his complaint that he was employed in that litigation by G. W. Chase, purporting to act as general manager of the business and affairs of appellant, and that the officers of appellant, with knowledge of the employment of appellee and of his performance of the services in the litigation, accepted the benefits and ratified such employment.   Appellant answered denying that Chase was the manager of the business or affairs of appellant or had any authority to employ appellee as attorney, and also denied that the employment had been ratified or the services accepted by appellant.   There was a trial of the issues before a jury, which resulted in, a verdict in favor of appellee.

Appellant is a foreign corporation, and owns and operates certain mining property in North Arkansas. For the past twenty-five years, up to the time of the occurrences now under investigation, G. W. Chase was the general manager of appellant's business in Arkansas.   In the autumn of 1919 Chase entered into a contract with Miss Roze E. Bennett, authorizing her, for a consideration, to find a purchaser and make a sale of a certain group of mining properties, including the property of appellant.   During the summer of 1920 Chase, purporting to act as manager and agent of appellant, employed appellee as an attorney at law to institute an action against Miss Bennett to cancel, as a cloud on the title to the lands owned by Chase and appellant, the aforesaid contract authorizing her to make sale of the

property. It appears that this contract was placed of record, and, upon consultation with attorneys, it was determined that it was, or might become, a cloud on the title of appellant to the property it owned in its mining operations. The action was instituted in September, 1920, and both Chase and appellant were joined as plaintiffs, and Miss Bennett was the sole defendant. The cancellation was sought on the ground that the contract was obtained by fraud. Miss Bennett answered the complaint, denying the allegations of fraud, and she also filed a cross-complaint against appellant and Chase to recover damages for breach of the contract.

The testimony in this case establishes the fact that Chase had in fact ceased to be the manager of appellant, and that on April 12, 1920, there had been a complete change in the officers and management of appellant corporation. Appellee testified, however, that he did not know of this change, that Chase had been the manager for twenty-five years, and appeared to be still in control of the business and affairs of appellant in this State, and that Chase employed him not only for himself but for appellant. Appellee also testified that, as soon as he filed the complaint, he mailed a copy of the pleadings to Mr. Reid, the president of the corporation, who resided at Memphis, and also mailed a copy to a Mr. Straub, of Pittsburgh, who was understood to be negotiating for the purchase of the stock. Reid had been president of the corporation, but ceased to be on April 12, 1920, when new officers were elected. A Mr. Lyons was elected president to succeed Reid, and appellee testified that, after the institution of the suit, Lyons came to appellee's office in Yellville, Marion County, where the suit was pending, and conferred with him about the pendency of the suit. He testified that he went over the matter with Mr. Lyons, fully informing him as to the status of the litigation, and that Lyons made no objection to the inclusion of appellant as plaintiff in the litigation, or to appellee's conducting the litigation as attorney for the plaintiffs. Appellee testified that about that time,

or shortly thereafter, another attorney in, Yellville was employed to assist him in the litigation, and that they prepared the case for trial and presented it in the chancery court. There was a decree against appellant, which was appealed to this court and reversed. After the decree was rendered, appellee was informed by appellant that other attorneys in Little Rock would be employed to conduct the case in the Supreme Court, and with that appellee's connection with the litigation ended.

The testimony adduced by appellant shows conclusively that Chase had ceased to be the manager of the business at the time the litigation with Miss Bennett was instituted, and the testimony also tended to show that appellee's employment was never ratified by the proper officers of appellant.

The principal contention in the case is that the evidence is not legally sufficient to sustain the verdict. The case went to the jury upon the sole issue as to whether or not appellant ratified the employment of appellee by Chase, and we consider the testimony for the purpose of determining whether or not it is legally sufficient to sustain the verdict in favor of appellee on that issue. We think that the testimony is sufficient. According to the testimony of appellee, he accepted employment from Chase in good faith for the purpose of instituting an action to remove a cloud upon appellant's title to the property, and he had reason to believe, and did believe, that Chase was authorized to employ him. Chase had previously employed him for appellant, and the fees had been regularly paid. He further testified that, after the suit was commenced, the president of the corporation conferred with him about the litigation, with knowledge that appellant was a party to the suit, and encouraged him to continue in its prosecution.

The facts of the case come within the rule announced by this court in *Davis* v. *Trimble*, 76 Ark. 115, 88 S. W., 920, where we said that, when persons were informed that they were parties to a suit and that an attorney had been employed, even without authority to represent them in the

litigation, if they remained silent and accepted the services of the attorney, "even though employed by another, the law would imply an agreement on their part to pay for the services." The testimony in the present case fully measured up to that rule. Viewing it in the light most favorable to appellee, appellant's officers knew that a suit had been brought by appellee in appellant's name to protect its property, and without objection accepted the services of appellee. It is true that appellant was not a party to the contract between Chase and Miss Bennett, and for this reason the Supreme Court reversed the decree in Miss Bennett's favor. But the suit was instituted in good faith, upon the theory that the contract was, or might be considered, a cloud on appellant's title, it being a contract which related to and specifically described appellant's property. With full knowledge of the pendency of the suit, appellant's authorized officers permitted it to proceed to final decree. If Mr. Lyons, as president of appellant corporation, objected to appellant being made a party to the action, he should have made known the objection at the time it was brought to his attention by appellee in the latter's office. Instead of making objection, he kept silent and permitted the suit to proceed to final decree, and permitted appellee to continue his services in the prosecution of the suit in appellant's name as well as that of Chase.

There were objections to the court's charge, but we are of the opinion that the only issue in the case, that of ratification of appellee's employment by acceptance of his services, was correctly submitted to the jury. The objections made here to those instructions are not well founded.

Finding no error in the record, the judgment must be affirmed, and it is so ordered.